**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————
MARY MORGAN, et al.,            )
                                )
        Plaintiffs,             )
                                )
     v.                         )     Civil Action No. 11-1066 (GK)
                                )
RICHMOND SCHOOL OF HEALTH AND )
TECHNOLOGY, INC.,               )
                                )
        Defendant.              )
———————————————————)

**MEMORANDUM OPINION**

Plaintiffs are or have been students at Defendant Richmond School of Health and Technology, Inc. ("RSHT"). They bring this suit on behalf of themselves and others similarly-situated for violations of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq., Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., and the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 et seq., and for breach of contract and fraudulent inducement to contract. The matter is now before the Court on Defendant's Motion to Dismiss or Transfer [Dkt. No. 22]. Upon consideration of the Motion, Opposition, Reply, Supplemental Briefs, and the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss or Transfer is **granted**.

## I. Background[1]

Plaintiffs, who are dissatisfied students at RSHT, have brought this case as a breach of contract action. RSHT is a for-profit vocational college with campuses in Richmond, Virginia, and Chester, Virginia. RSHT offers vocational degrees for occupations such as surgical technician, medical assistant, and pharmacy technician.

To summarize, Plaintiffs allege that RSHT does not provide the education it promises its prospective students. Notably, despite representation to the contrary, RSHT fails to prepare its students for tests necessary for certification or licensing in their fields, fails to place students in necessary externships, and fails to provide critical equipment or, at times, even teachers.

Nevertheless, tuition at RSHT ranges from $10,000 to $20,000 per program, depending on the program. The vast majority of RSHT's students finance their education through federal financial aid. RSHT itself participates in the financial aid process by filling out and submitting forms to the United States Department of Education ("DOE") on behalf of the student. Once a student qualifies for a loan, RSHT receives funding directly from the

---

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from the Second Amended Complaint.

United States and credits the student's account to pay for tuition and other charges. The student must later repay the loan with any applicable interest. RSHT graduates often fail to obtain a job in their field of study and thereafter find themselves heavily burdened by tuition debt.

On June 8, 2011, Plaintiffs filed their first Complaint [Dkt. No. 3]. On August 3, 2011, Plaintiffs filed an Amended Complaint [Dkt. No. 3]. On December 7, 2011, the Court granted leave for Plaintiffs to file their Second Amended Complaint [Dkt. No. 21].

The Second Amended Complaint sets forth five causes of action. First, Plaintiffs claim that RSHT violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq., because its use of financial aid intentionally discriminated and disparately impacted African Americans. Second, Plaintiffs claim that RSHT violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., because its acts, policies, and practices intentionally discriminated against African Americans. Third, Plaintiffs claim that RSHT violated the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 et seq., by committing fraudulent acts relating to Plaintiffs' enrollment. Fourth, Plaintiffs claim that RSHT breached its contracts with them by violating the implied covenant of good faith and fair dealing and failing to provide Plaintiffs with an adequate education. Fifth, Plaintiffs claim that RSHT fraudulently induced them to contract.

On December 15, 2011, RSHT filed this Motion to Dismiss or Transfer pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). On January 13, 2012, Plaintiffs filed their Opposition [Dkt. No. 13]. On January 20, 2012, RSHT filed its Reply [Dkt. No. 25].

## II.  Standard of Review

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over each defendant. FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008). In order to satisfy this burden, a plaintiff must establish the court's jurisdiction over each defendant through specific allegations in his or her complaint. Kopff v. Battaglia, 425 F. Supp. 2d 76, 80-81 (D.D.C. 2006). Additionally, the plaintiff cannot rely on conclusory allegations; rather, he or she must allege the specific facts on which personal jurisdiction is based. First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988).

On a motion to dismiss for improper venue under Rule 12(b)(3), "the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Pendleton v. Mukasey, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (citation and internal quotations omitted). "Because it is the plaintiff's obligation to institute

the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).

## III. Analysis

### A.    Personal Jurisdiction

RSHT contends that Plaintiffs have failed to carry their burden of establishing personal jurisdiction. "To establish personal jurisdiction, plaintiffs must (1) plead facts sufficient to show that jurisdiction is appropriate under the District of Columbia's long-arm statute and (2) satisfy the 'minimum contacts' demands of constitutional due process." Fuentes-Fernandez & Co. v. Caballero & Castellanos, PL, 770 F. Supp. 2d 277, 281 (D.D.C. 2011) (citing United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995)).

In relevant part, the District of Columbia's long-arm statute reads, "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a). "The plaintiff bears the burden of establishing the factual basis for the exercise of personal jurisdiction over a defendant by demonstrating that (1) the defendant transacted business in the District; (2) the claim arose from the business transacted in the District; and (3) the defendant had minimum contacts with the

District such that the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice." Gibbons & Co. v. Roskamp Inst., Civ. No. 06-720 (EGS), 2006 WL 2506646, at *2 (D.D.C. Aug. 28, 2006) (citing Cellutech, Inc. v. Centennial Cellular Corp., 871 F. Supp. 46, 48 (D.D.C. 1994)); Koteen v. Bermuda Cablevision, Ltd., 913 F.2d 973, 974 (D.C. Cir. 1990).

The parties agree that RSHT's only contacts with the District of Columbia flow from its participation in federal financial aid programs through DOE under Title IV of the Higher Education Act of 1965. See Def.'s Mot. 25; Pls.' Opp'n 17-22; 2d Am. Compl. ¶¶ 4, 69-78, 83-91. Therefore, if, as RSHT argues, its contacts with DOE are legally insufficient to establish personal jurisdiction under the government contacts exception, then the case must be dismissed. NBC-USA Housing, Inc. Twenty-Six v. Donovan, 741 F. Supp. 2d 55, 59 (D.D.C. 2010) (no personal jurisdiction where defendant's only contact with the District of Columbia was a "government contact.").

"[T]he traditional 'government contacts' principle . . . denies personal jurisdiction over non-residents whose only contact with this jurisdiction involves uniquely governmental activities." Siam Kraft Paper Co. v. Parsons & Whittemore, Inc., 400 F. Supp. 810, 812 (D.D.C. 1975); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 786-87 (D.C. Cir. 1983). This exception "finds its source in the unique character of the District as the seat of national

government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." Envtl. Research Int'l, Inc. v. Lockwood Green Eng'rs, Inc., 355 A.2d 808, 813 (D.C. 1976) (en banc). Indeed, "[t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." Id.

Therefore, "certain contacts with the federal government--such as meeting with federal officials in Washington, D.C., or receiving federal funding--are insufficient to establish personal jurisdiction." Fuentes-Fernandez & Co., 770 F. Supp. 2d at 281. In order to come within the government contacts exception, a defendant's only contacts with the District of Columbia must involve uniquely governmental activities. Id. at 281-82 (citing Siam Kraft Paper Co., 400 F. Supp. at 812).

Accordingly, the government contacts exception has been applied to instances where a defendant was in administrative receivership and therefore managed by the Department of Housing and Urban Development, Fuentes-Fernandez & Co., 770 F. Supp. 2d at 280-82; where a defendant entered into a sales contract with the Department of Housing and Urban Development, NBC-USA Housing, Inc. Twenty-Six, 741 F. Supp. 2d at 59; where a defendant school

-7-

received funds from the Department of State, Ficken v. Rice, 594 F.
Supp. 2d 71, 75 (D.D.C. 2009); where a defendant entered into
contracts to sell vaccines to the Department of Defense, Savage v.
Bioport, Inc., 560 F. Supp. 2d 55, 62 (D.D.C. 2006); and where a
defendant visited the Environmental Protection Agency to procure
grants, Envtl. Resources Int'l, 355 A.2d at 813.

Participating in federal financial aid programs through DOE is
no different than receiving federal grants, or, indeed, from
receiving direct financial support for education services from the
federal government. See id.; Siam Kraft Paper Co., 400 F. Supp. at
812; Ficken, 594 F. Supp. 2d at 75. Use of federal financial aid
under Title IV of the Higher Education Act is obviously a uniquely
governmental activity. Hence, contacts with the District of
Columbia in furtherance of this activity do not suffice to
establish personal jurisdiction. Fuentes-Fernandez & Co., 770 F.
Supp. 2d at 281-82; Siam Kraft Paper Co., 400 F. Supp. at 812.

Moreover, the situation presented here is precisely the type
that the government contacts exception seeks to prevent. As the
District of Columbia Court of Appeals stated en banc, permitting
"local courts to assert personal jurisdiction over nonresidents
whose sole contact with the District consists of dealing with a
federal instrumentality . . . would threaten to convert the
District of Columbia into a national judicial forum." Envtl.
Research Int'l, 355 A.2d at 813. If interacting with the Department

of Education in order to secure federal financial aid for students were sufficient to establish personal jurisdiction, the District of Columbia would become a national judicial forum for litigation against schools, colleges, and universities throughout the country. Indeed, by Plaintiffs' own estimation, approximately 2000 for-profit colleges would find themselves liable to be haled into court in the District for any manner of dispute. 2d Am. Compl. ¶ 69. The government contacts exception does not permit this result.

In response to RSHT's contentions, Plaintiffs rely, almost entirely, on a single, short, unpublished decision in United States v. Wilfred Am. Educ. Corp., No. 86-333, 1987 WL 10501 (D.D.C. Apr. 23, 1987). See Pls.' Opp'n 13-22. According to Plaintiffs, "in Wilfred, this Court squarely rejected the precise jurisdictional argument advanced by RSHT on virtually identical facts." Id. at 13. Although it is true that the Wilfred case held that the defendant's contacts with the government relating to federal financial aid were sufficient to establish personal jurisdiction, Plaintiffs have ignored a critical distinction. In that case, the Inspector General of the Department of Education, i.e. the government itself, sought to enforce subpoenas, which were enforceable in any appropriate United States district court under the Inspector General Act of 1978, and which were designed to investigate the defendant's use, or misuse, of financial aid. Wilfred, 1987 WL 10501, at *1. Relying on this important fact, Judge Pratt found that "[t]he additional

burden on the District of Columbia courts resulting from cases brought by government agencies carrying on investigations in Washington will not flood or cripple the local courts." Id. at *4. In short, even if Wilfred had any precedential value, which is doubtful, it is clearly distinguishable from the case at hand.

Finally, in a Notice of Supplemental Authority ("Pls.' Supp. Mem.") [Dkt. No. 26], Plaintiffs argue that this case falls under a newly-delineated fraud exception to the government contacts exception. Plaintiffs contend that because RSHT made fraudulent representations to DOE when submitting student loan paperwork, the government contacts exception should not shield it from personal jurisdiction in Washington, D.C.  Pls.' Supp. Mem. 2-6.

In answer to a certified question from the Court of Appeals for the D.C. Circuit, the District of Columbia Court of Appeals recently held that the government contacts exception contains a very narrow fraud exception. Companhia Brasileira Carbureto De Calcio-CBCC v. Applied Indus. Materials Corp., 35 A.3d 1127, 1134 (D.C. 2012). The contours of this exception to the exception are crystal clear: "a person who uses the government as an instrumentality of fraud . . . and thereby causes unwarranted government action against another, forfeits the protection of the government contacts exception." Id.  This holding is very narrow, and "[c]ases in which this fraud exception applies should be rare indeed." Id.

Here, there is simply no allegation that RSHT used "the government as an instrumentality of fraud" or "fraudulently induced unwarranted government action against the plaintiff." Id.; see Pls.' Supp. Mem. 4-5 (summarizing Plaintiffs' allegations of fraud). If anything, Plaintiffs' allegations suggest that RSHT assisted students in obtaining funding they desired and needed. Certainly, though, there is no allegation that RSHT employed the allegedly fraudulent statements to coax the government into action against any Plaintiff, as was the case in Companhia. 35 A.3d at 1132. The fraud exception to the government contacts exception is therefore inapplicable.

In sum, RSHT's sole contacts with the District of Columbia come within the government contacts exception. Therefore, Plaintiffs have failed to carry their burden of establishing personal jurisdiction over RSHT. FC Inv. Grp. LC, 529 F.3d at 1091; Naartex, 722 F.2d at 786-87; Siam Kraft Paper Co., 400 F. Supp. at 812.

## B.   Venue

"A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants." Naartex, 722 F.2d at 789; Sweetgreen, Inc. v. Sweet Leaf, Inc., ___F. Supp. 2d___, Civil Action No. 11-cv-00859 (JDB), 2012 WL 975415, at *5 (D.D.C. Mar. 23, 2012). "Transfer is appropriate under 28 U.S.C. § 1406(a) 'when procedural obstacles [such as lack of personal

jurisdiction or improper venue] impede an expeditious and orderly adjudication . . . on the merits.'" <u>Id.</u> (quoting <u>Sinclair v. Kleindienst</u>, 711 F.2d 291, 293-94 (D.C. Cir. 1983) (alterations in original). "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." <u>Naartex</u>, 722 F.2d at 789. Transfer of a case is usually preferable to dismissal. <u>Jones v. United States</u>, 820 F. Supp. 2d 58, 61 (D.D.C. 2011).

It is clear that this case should be transferred to the Eastern District of Virginia.[2] As an initial matter, Plaintiffs do not dispute RSHT's contention that venue would be proper in the Eastern District of Virginia. <u>See</u> Defs.' Mot. 35-36; Pls.' Opp'n 34-35; 28 U.S.C. § 1406(a). More to the point, <u>all</u> parties, <u>all</u> events related to the case, and <u>all</u> known witnesses reside or occurred in the Eastern District of Virginia. <u>See</u> <u>generally</u> 2d Am. Compl. Because this Court does not have personal jurisdiction over

---

[2] RSHT argues alternatively that the Court should transfer the case to the Eastern District of Virginia, Richmond Division, under the similar provisions of 28 U.S.C. § 1404(a). Def.'s Mot. 35-36. Section 1404(a) reads, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As under § 1406(a), § 1404(a) "vests discretion in the District Court to adjudicate motions for transfer on an 'individualized, case-by-case consideration of convenience and fairness.'" <u>Otter v. Salazar</u>, 718 F. Supp. 2d 62, 63-64 (D.D.C. 2010) (quoting <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988)). There is no doubt the case would also properly be transferred under § 1404(a), for the reasons outlined above.

RSHT, and because the Eastern District of Virginia is a proper venue, it is in the interest of justice to transfer this case to the Eastern District of Virginia.

## IV.  Conclusion

For the reasons set forth above, RSHT's Motion to Dismiss or Transfer is **granted**, and the case shall be transferred to the Eastern District of Virginia, Richmond Division.

An Order will issue with this opinion.

April 30, 2012

/s/
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**